# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN BEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 6512 |
| v. | ) | |
| | ) | Chief Judge Rubén Castillo |
| JEFF MASON and THE UNIVERSITY | ) | |
| OF CHICAGO, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

John Bear ("Plaintiff") filed this action against the University of Chicago ("University") and Jeff Mason ("Mason"), the parent of a University football player, based on events precipitated by a confrontation between Plaintiff and Mason. (R. 1, Compl.) Plaintiff brings two claims against the University: (1) a claim of gender discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and (2) a premises-liability claim. (*Id.* ¶¶ 45-60.) The University moves to dismiss Plaintiff's premises-liability claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 17, Mot.) For the reasons stated below, the Court grants the University's motion.

## BACKGROUND[1]

In June 2016, Plaintiff was hired by the University as an assistant football coach. (R. 1, Compl. ¶ 8.) Plaintiff alleges that when he was recruited for the position, he was told by the University's head football coach, Chris Wilkerson ("Wilkerson"), that the University had a "strong athletic department" and that Plaintiff "had the support of an 'up and coming athletic

---

[1] These facts are recounted as averred in Plaintiff's complaint (R. 1).

director.'" (*Id.* ¶ 9.) To entice Plaintiff to accept the position, Wilkerson allegedly made multiple statements to Plaintiff describing the University's "commitment to excellence" and "desire to have a winning football team." (*Id.* ¶ 10.)

After taking the position, Plaintiff realized that the University's athletic director, Erin McDermott ("McDermott"), allegedly had "little interest in either treating male coaches fairly or building a strong football team." (*Id.* ¶ 12.) Instead, Plaintiff alleges, McDermott and the University were principally interested in the profit to be gained from the football program. (*Id.* ¶ 14.) To that end, McDermott allegedly encouraged unruly "tailgates" before and during University football games. (*Id.* ¶¶ 15-19.) According to Plaintiff, McDermott directed for tables and tents to be set out around the University football field on game days—specifically, on 56th Street and its surrounding sidewalks in the Hyde Park neighborhood of Chicago. (*Id.* ¶ 15.) At these tailgates, students, alumni, and parents of students allegedly drank alcohol excessively and without restriction. (*Id.* ¶¶ 15-16.) Plaintiff claims that the excessive drinking at tailgates led to dangerous incidents. (*Id.* ¶ 17.) Plaintiff alleges that on one occasion, for example, some parents of University students began shouting racial slurs at some other parents and a fight almost broke out. (*Id.*) Plaintiff further alleges that the football coaching staff expressed concerns about the danger posed by the tailgates, but McDermott and the University failed to take any action or put security measures in place at the tailgates. (*Id.* ¶¶ 18-19.)

Mason is the parent of a University football player. (*Id.* ¶ 20.) Plaintiff alleges that Mason had a history of disruptive behavior during University tailgates, including "excessive drinking, personal insults, and complaints and threats against the coaching staff for refusing to allow his son to play more during games." (*Id.* ¶¶ 21-22.) Plaintiff further claims that Mason would "regularly email other parents of students and express frustration and disappointment with the

football coaching staff." (*Id.* ¶ 23.) Mason also allegedly "made repeated complaints throughout the 2016 football season to other parents regarding both [Plaintiff] and the other members of the coaching staff, blaming the team's inability to win every game on poor coaching and their refusal to play Mason's son more often." (*Id.* ¶ 24.) According to Plaintiff, "some of the students' parents began avoiding Mason given his tendency to get drunk and unruly at tailgates and engage in derogatory treatment of the football coaching staff." (*Id.* ¶ 25.) Plaintiff alleges that he, Wilkerson, and other members of the football coaching staff repeatedly expressed their concerns and frustrations regarding Mason to both McDermott and the University. (*Id.* ¶ 26.)

On November 12, 2016, Mason attended the 56th Street tailgate during a football game between the University and Washington University. (*Id.* ¶¶ 28-30.) Mason allegedly drank excessive amounts of alcohol and became increasingly disorderly. (*Id.* ¶ 30.) After the game, Plaintiff was in a restricted section of the football stadium with other coaches, players, and members of his family. (*Id.* ¶ 31.) Plaintiff alleges that Mason was belligerently shouting at University employees to be let into the stadium and, because there was no security at the football game, was able to force his way into the restricted section. (*Id.* ¶¶ 32-33.) Plaintiff claims that Mason then violently grabbed him by the wrist, spun him around, and began yelling at him. (*Id.* ¶ 34.) According to Plaintiff, Mason shouted several derogatory remarks regarding Plaintiff's management and coaching of the football team, such as "You don't care about the players!" (*Id.* ¶ 35.) Plaintiff alleges that he "verbally defended himself from Mason's remarks, while reasonably believing he was being attacked and assaulted." (*Id.* ¶ 36.) Plaintiff then left the restricted area and returned to his office. (*Id.* ¶ 37.) After waiting in his office for someone from the athletic department to come speak to him about the incident, Plaintiff went home. (*Id.* ¶¶ 38-40.)

On November 14, 2016, two days after the confrontation between Plaintiff and Mason, McDermott informed Plaintiff that the University was placing him on "investigative suspension." (*Id.* ¶ 41.) Plaintiff alleges that, during its investigation, the University received an email from another parent that described Mason's "long, violent history of . . . behavior at football games and his history of harassing other parents, students, and football coaches." (*Id.* ¶ 42.) Plaintiff claims that other parents and coaches voiced support for him as well and acknowledged to the University that Mason assaulted Plaintiff. (*Id.* ¶ 43.) Despite this support, the University ultimately offered Plaintiff a choice between resigning or having his employment terminated. (*Id.* ¶ 44.) Plaintiff elected to resign "under duress," rather than be fired, in order to protect his effort to find other employment. (*Id.*)

Plaintiff brings federal and state-law claims against both the University and Mason based on what transpired. In Count I, Plaintiff claims that by terminating his employment in response to the altercation, the University discriminated against him on the basis of his gender in violation of Title VII. (*Id.* ¶¶ 45-50.) Plaintiff alleges generally that the University has a "pattern of treating male coaches differently than female coaches." (*Id.* ¶ 13.) Plaintiff claims more specifically that similarly situated female coaches and other University employees were treated less harshly when involved in altercations, disputes, and assaults. (*Id.* ¶ 48.) As an example, Plaintiff asserts that female coach Amy Reifert was involved in a "loud verbal incident" during the 2015-2016 school year, but that this resulted only in a policy change rather than termination of her employment. (*Id.* ¶ 13.)

In Count II, Plaintiff asserts a premises-liability claim against the University under Illinois law. (*Id.* ¶¶ 51-60.) Plaintiff alleges that the University encouraged and facilitated the tailgates, had a duty of reasonable care to ensure the safety of students, alumni, parents, and

employees after inviting them onto the campus, and breached its duty of reasonable care by "allowing and encouraging unruly tailgates with no security" and "failing to ensure a safe work environment for its staff." (*Id.* ¶¶ 53-57.) Because the University breached its duty of reasonable care, Plaintiff alleges, Mason was "able to access the restricted area of the football stadium where he assaulted [Plaintiff]," and Plaintiff suffered physical, economic, and emotional damages as a result. (*Id.* ¶¶ 58-60.) Against Mason, Plaintiff asserts claims for assault (Count III), battery (Count IV), tortious interference with business contracts (Count V), and defamation (Count VI).[2] (*Id.* ¶¶ 61-85.)

## PROCEDURAL HISTORY

On September 8, 2017, Plaintiff filed this suit against the University and Mason. (R. 1, Compl.) On November 7, 2017, the University filed its present motion to dismiss. (R. 17, Mot.) The University contends that Plaintiff's premises-liability claim should be dismissed on either of two independent grounds: (1) the claim is preempted by the Illinois Workers' Compensation Act ("IWCA"), which provides the exclusive remedy for alleged employer negligence against employees; and (2) under the no-duty rule, the University cannot be held liable for the alleged criminal actions of a third party. (*Id.* ¶¶ 2-4; R. 18, Mem. at 1-2.)

In response, Plaintiff argues that the IWCA does not preempt his premises-liability claim because the University is liable to him in a dual capacity: both as his employer and as a business invitor. (R. 33, Resp. at 3-5.) Plaintiff further argues that the University can be held liable for the criminal actions of a third party because, by hosting tailgates, the University created a "volatile environment." (*Id.* at 5.)

---

[2] Because the claims against Mason are not at issue in the University's motion, the Court need not recount the supporting allegations in detail.

## LEGAL STANDARD

Under federal pleading standards, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

## ANALYSIS

The Illinois Workers' Compensation Act, 820 ILL. COMP. STAT. 305/1 *et seq.*, "provides an administrative remedy for employees' injuries arising out of and in the course of the[ir] employment." *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1038 (7th Cir. 2018) (citation and internal quotation marks omitted), *petition for cert. filed* (June 5, 2018) (No. 17-1691). Section 5 of the IWCA provides that "[n]o common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act[.]" 820 ILL. COMP. STAT. 305/5(a).

Section 11 similarly provides that "[t]he compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer" covered by the IWCA. 820 ILL. COMP. STAT. 305/11. Together, these provisions "abrogate[] employer liability for all common law negligence claims," such that the IWCA "provides the exclusive means by which an employee can recover against an employer for a work-related injury in Illinois." *Baylay*, 881 F.3d at 1038-39 (citation omitted). The exclusivity provisions are "part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance." *Id.* at 1039 (citation omitted). "Injured employees can recover for their injuries without establishing their employer's negligence but also relinquish their rights to maintain common law actions against their employers." *Id.* (citation and internal quotation marks omitted).

If an employer is sued in common law, "the employer may raise the IWCA's exclusivity provisions as an affirmative defense." *Id.* "If it establishes the elements of the affirmative defense, then the burden shifts to the plaintiff to show that his claims are not subject to the IWCA or its exclusivity provisions." *Id.* To avoid the IWCA's exclusivity provisions, a plaintiff must show that his injury either: (1) was not accidental; (2) did not arise from his employment; (3) was not received during the course of employment; or (4) was not compensable under the IWCA. *Id.*

In Count II, Plaintiff asserts a claim of premises liability against the University based on the "assault" by Mason. (R. 1, Compl. ¶¶ 51-60.) Premises liability is a theory of common-law negligence on the part of an owner or possessor of land.[3] *Rhodes v. Illinois Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267-68 (Ill. 1996); *see also Spencer v. KFC Corp.*, No. 06 4615, 2009 WL

---

[3] There is a related statute, the Illinois Premises Liability Act, 740 ILL. COMP. STAT. 130/1 *et seq.*, but that statute merely "abolished the common law distinction between the duties owed . . . to an invitee and a licensee." *Rhodes*, 665 N.E.2d at 1268.

249230, at *8 (N.D. Ill. Feb. 3, 2009) ("To prevail on a premises liability . . . claim, a plaintiff must prove all elements of a common law negligence claim."). Accordingly, this claim would ordinarily be preempted by the IWCA. *See Baylay*, 881 F.3d at 1038-39.

Plaintiff does not dispute that he and the University are covered by the IWCA and its exclusivity provisions, nor does he argue or attempt to establish that any of the above four exceptions applies. Plaintiff instead asserts that his claim "falls into the dual capacity exception." (R. 33, Resp. at 3.) Illinois courts have recognized the dual-capacity doctrine as "a limited exception to the exclusive remedy provision[s]" of the IWCA. *Garland v. Morgan Stanley & Co.*, 996 N.E.2d 188, 200 (Ill. App. Ct. 2013). Under the doctrine, "an employer normally shielded . . . by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer." *Id.* (citation omitted). "[T]o invoke the dual capacity doctrine . . . the plaintiff has the burden of establishing both that: (1) the employer was acting in two 'capacities,' such that the second capacity confers upon him obligations unrelated to those flowing from the first, that of employer; and that (2) the employer was acting as a distinct separate legal persona." *Id.* at 201. "[T]he key question . . . is whether an employer is acting as a 'separate legal entity.'" *Id.* (citation omitted).

Plaintiff contends that, by inviting himself, other employees, students, alumni, parents, and random passersby onto University premises for the tailgates, the University was "acting in two distinct legal capacities"—as both an employer and a business invitor. (R. 33, Resp. at 4; *see also* R. 35, Reply at 2 ("Plaintiff argues that . . . the University is liable to him in a dual capacity; both as his employer and [as] a business invitor.").) As a result, Plaintiff argues, the University

"owed all of those individuals"—himself included—"a separate and distinct duty to exercise reasonable care in maintain[ing] the premises in a reasonably safe condition." (R. 33, Resp. at 4.)

As the owner or possessor of the land where the tailgates were held, the University may have had common-law duties to the non-employees that were invited. *See Rhodes*, 665 N.E.2d at 1268 (explaining landowner duties to invitees). However, the Illinois Supreme Court has explained that "mere ownership of land does not endow [an employer] with a second legal persona or entity" for purposes of the dual-capacity exception. *Sharp v. Gallagher*, 447 N.E.2d 786, 788 (Ill. 1983). Were it otherwise, the IWCA's exclusivity would be "reduced to shambles" because "[a]n employer, as part of his business, will almost always own or occupy premises, and maintain them as an integral part of conducting his business." *Id.* (citation omitted). Thus, the mere fact that the University owned or possessed the land on which the confrontation with Mason occurred is insufficient to trigger the dual-capacity exception. *See id.*

Plaintiff principally relies on *Marcus v. Green*, 300 N.E.2d 512 (Ill. App. Ct. 1973), in support of his position. (R. 33, Resp. at 4.) While *Marcus* does provide limited support for Plaintiff's position, the continuing precedential value of that decision is "doubtful," as courts have repeatedly questioned *Marcus*'s reasoning and declined to follow it. *Hilgart v. 210 Mittel Drive P'ship*, 978 N.E.2d 710, 717 (Ill. App. Ct. 2012) (collecting cases and declining to follow *Marcus*); *see also Hyman v. Sipi Metals Corp.*, 509 N.E.2d 516, 518 (Ill. App. Ct. 1987) ("Cases following in the wake of *Marcus v. Green* declined to follow its reasoning[.]"). In any event, the circumstances here are distinguishable. In *Marcus*, the plaintiff, a carpenter, was injured while working at a construction site when the scaffolding on which he was standing collapsed. 300 N.E.2d at 513. His employer, an individual doing business as a construction company, was also a part-owner of the construction site through a partnership in which the employer was a partner. *Id.*

at 513-14. In addition to filing a workers' compensation claim, the plaintiff sued his employer under the Illinois Structural Work Act. *Id.* The court held that the Structural Work Act claim was not preempted by the IWCA because the employer was being sued "in a different legal capacity than that of an employer." *Id.* at 518. Because the employer was exposed to liability under the Structural Work Act only by virtue of his distinct and separate legal status as a member of the partnership—which, in turn, owned the land in question—the claim was "not against the employer as employer" but rather "against an employer who is also an owner." *Id.* at 517-18.

Here, by contrast, Plaintiff seeks to hold the University liable as itself, not as a separate legal persona or in a distinct legal capacity. *See Hyman*, 509 N.E.2d at 518 (explaining that courts have distinguished *Marcus* as involving "an employee's action against a separate and distinct legal entity in which the employer had an ownership interest rather than against the employer *per se*"); *Sharp*, 447 N.E.2d at 788 ("A mere separate theory of liability against the same legal person as the employer is not a true basis for use of the dual capacity doctrine; the doctrine, instead, requires a distinct separate legal *persona*." (citation omitted)). In addition, the football stadium is "an integral part of conducting" the University's business, so far as it relates to Plaintiff's employment as a University football coach. *Sharp*, 447 N.E.2d at 788. The construction site in *Marcus*, by contrast, was not; the premises instead belonged to the construction company's *customer*, even if that customer happened to be partly owned by the employer. *Marcus*, 300 N.E.2d at 513.

The Court concludes that the dual-capacity exception does not apply, and Plaintiff's premises-liability claim (Count II) is therefore preempted by the IWCA. 820 ILL. COMP. STAT. 305/5(a); 820 ILL. COMP. STAT. 305/11. Because this is a sufficient basis for dismissal, the Court

need not address the University's alternate argument that it cannot be held liable for the alleged criminal actions of a third party.

## CONCLUSION

For the foregoing reasons, the University's motion to dismiss (R. 17) is GRANTED and Plaintiff's premises-liability claim (Count II) is DISMISSED with prejudice. The parties shall appear for a status hearing on July 24, 2018, at 9:45 a.m. The parties are DIRECTED to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

Dated: July 20, 2018